FOURTH DIVISION

May 22, 2003          

No. 1-01-1134

THE PEOPLE OF THE STATE OF ILLINOIS, 

Plaintiff-Appellee,

v.

JARIEN GRANT,   

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

James M. Schreier,

Judge Presiding.

JUSTICE KARNEZIS delivered the opinion of the court:

Following a bench trial, defendant Jarien Grant was convicted of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1)(3)(A) (West 2000)) and sentenced to one year of imprisonment.  Defendant now appeals and argues: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) trial counsel was ineffective; (3) trial counsel operated under a conflict of interest; and (4) section 24-1.6(a)(1)(3)(A) of the aggravated unlawful use of a weapon statute is unconstitutional as it is violative of substantive due process (720 ILCS 5/24-1.6(a)(1)(3)(A) (West 2000)).  We affirm.

On August 25, 2000, at approximately 12:50 a.m., Officer Staggers of the Chicago police department observed a blue four-door vehicle go the wrong way down the one-way street. After activating her emergency lights, she and her partner followed the vehicle in their patrol car for approximately four blocks before the vehicle came to a stop.  While following the vehicle, Officer Staggers saw the passenger door open a "crack" while the vehicle was still moving.  Officer Staggers ordered the driver, Shawn Rucker
(footnote: 1), out of the vehicle.  She instructed Rucker to walk toward her and to get on his knees.  About three minutes later, defendant, the passenger, was ordered out of the vehicle.  Both defendant and Rucker were searched and placed in the rear of the squad car.  Officer Staggers searched the vehicle and found a gun on the front passenger bucket seat.

Officer Staggers testified at a hearing on Rucker's motion to suppress statements
(footnote: 2) that after she ordered Rucker to his knees, Rucker stated "the gun is mine.  I have a F.O.I.D. card."  Staggers did not see a gun in Rucker's possession nor did she find a weapon after searching his person.  Once at the station and after being given his 
Miranda
 rights, Rucker told Officer Staggers that he had bought the gun the previous Tuesday from a location in Dolton.  Rucker also told Officer Staggers that he was carrying the gun for protection and that he was showing the gun to defendant.

Officer Staggers was questioned with respect to the reports she generated in this case.  She admitted that her report did not contain the statements Rucker made at the scene or at the police station.   Officer Staggers also conceded that she had waited until the day of trial to tell the State that Rucker made additional statements at the police station regarding where he got the gun and why he was carrying the gun. 

Rucker testified at the hearing on the motion.  He stated that he never made any statements to Officer Staggers regarding the gun at the scene and that he had denied knowing of any gun after being confronted with the gun subsequent to the search of the vehicle.  He admitted showing Officer Staggers a firearm owner's identification (FOID) card at the police station but denied being given his 
Miranda
 rights.  

The trial court denied Rucker's motion to suppress statements.  Trial was immediately commenced and the court accepted Officer Staggers's testimony at the hearing by way of stipulation at trial.  

Officer Staggers then testified at trial and stated that defendant was the passenger in the car being driven by Rucker.  After Rucker had been secured in the back of the squad car, she ordered defendant out of the vehicle. Defendant complied, but as he was getting out, she saw him reach back and put something on the seat.  Officer Stagger demonstrated for the court how defendant moved when he got out of the car.  The court noted that Officer Staggers had two hands moving and placed down on the seat.  After defendant exited, Officer Staggers and her partner searched the vehicle and saw a gun lying on the front passenger seat where defendant had been sitting. The gun was uncased and loaded with seven live rounds.  

On cross-examination, Officer Staggers stated that during the time period that she and her partner were following the vehicle, she saw the passenger door open a "crack" while the vehicle was still moving, but she did not see anything expelled from the vehicle.  She further stated that when she and her partner were following the vehicle, she could not see defendant's hands or if defendant made any shoulder movements. She did not include any of this information in her reports.   

At the conclusion of Officer Stagger's testimony, the State rested.  Counsel moved for a directed finding.  The trial court granted counsel's motion with respect to Rucker.  With respect to defendant, the trial court found that the State had failed to prove defendant had any prior felony convictions to sustain a conviction for unlawful use of a weapon by a felon.  Therefore, the State could proceed on the lesser offense of aggravated unlawful use of a weapon.

Defendant then testified and stated that he was the passenger in the vehicle being driven by Rucker on the night of August 25, 2000.  After Rucker went the wrong way down a one-way street, defendant noticed the patrol car behind them and asked Rucker to pull over.  Rucker indicated that he would not pull over because he was "dirty."  Defendant understood "dirty" to refer to the fact that Rucker had marijuana in his vehicle.   Defendant then fastened his seat belt because he was fearful that Rucker would take off at a high rate of speed to avoid the police.   Rucker eventually pulled over about four blocks later.

After the car stopped, the officers ordered defendant and Rucker to put their hands out of the window and requested that Rucker exit the vehicle.  They complied.  Several minutes later, defendant was ordered out the vehicle.  Because his hands were out the window, defendant lowered his left hand to open the door and used his right hand to push the door open.  He then used his left hand to unbuckle the seat belt and stepped out the car with his hands in the air.  

Defendant testified that the vehicle had a front bench seat.  He denied opening the passenger door while the vehicle was moving.  He further denied having a gun in his possession and stated that he had not seen a gun anywhere in the vehicle and did not attempt to hide the gun on the seat.  

The trial court found defendant guilty of aggravated unlawful use of a weapon in violation of section 24-1.6(a)(1)(3)(A).  It is from this judgment that defendant now appeals.

Defendant first argues that the State failed to prove him guilty of aggravated unlawful use of a weapon beyond a reasonable doubt.   
When a defendant is challenging the sufficiency of the evidence, the relevant inquiry is whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Smith
, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999).   The trier of fact is in the best position to determine the credibility of the witnesses, to resolve any inconsistencies or conflicts in their testimony, to assess the proper weight to be given to their testimony and to draw reasonable inferences from all of the evidence.  
People v. Cochran,
 323 Ill. App. 3d 669, 679, 753 N.E.2d 1155, 1163 (2001).

To obtain a conviction for aggravated unlawful use of a weapon as charged here, the State must prove that defendant knowingly carried a firearm in a vehicle that was uncased, loaded and immediately accessible at the time of the offense.  720 ILCS 5/24-1.6(a)(1)(3)(A) (West 2000).   The defendant need not have actually physically possessed the weapon, as criminal possession may be constructive.  
People v. Stack,
 244 Ill. App. 3d 393, 398, 613 N.E.2d 393, 369 (1993).  Where  possession is constructive, the State is required to prove that the defendant: (1) had knowledge of the presence of the weapon; and (2) had immediate and exclusive control over the area where the weapon was found.  
Stack
, 244 Ill. App. 3d at 398, 613 N.E.2d at 369.  

Here, defendant maintains that the State failed to meet its burden by failing to prove that defendant had knowledge that the weapon was in the vehicle.   A defendant's knowledge of the presence of a weapon may be proved by circumstantial evidence.  
People v. Rangel
, 163 Ill. App. 3d 730, 739, 516 N.E.2d 936, 941 (1987).  Knowledge may be inferred from several factors including: (1) the visibility of the weapon from defendant's location in the vehicle; (2) the amount of time in which the defendant had an opportunity to observe the weapon; and (3) gestures or movements made by the defendant that would suggest an effort to retrieve or conceal the weapon.  
People v. Davis
, 50 Ill. App. 3d 163, 168, 365 N.E.2d 1135, 1137 (1977).  

Our review of the record in the instant case reveals that the State presented sufficient evidence to establish that defendant had constructive possession of the weapon.   Although Officer Staggers could not see defendant's hands while he was seated in the passenger seat of the vehicle, when she asked defendant to exit the vehicle, she saw him reach back and put something on the seat. The uncased, loaded weapon was found on the same seat.  Because of the location of the gun at the time it was recovered, we can certainly infer that defendant had knowledge of the gun and that the gun was within his immediate and exclusive control.   Viewing the evidence in the light most favorable to the State, we find that a reasonable trier of fact could have found sufficient evidence to find defendant guilty of aggravated unlawful use of the weapon.  

Defendant next asserts that counsel was ineffective when he failed to call Rucker as a witness to testify that defendant did not know that the gun was in the vehicle.   At the hearing on Rucker's motion to suppress statements, Rucker testified that he told Officer Staggers that defendant "didn't know nothing about it," referring to the gun found in the vehicle.  Defendant asserts that had counsel called Rucker as a witness at trial to elicit the same testimony, the result of the proceedings would have been different.

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in 
Strickland v. Washington
, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064
 (1984).  A defendant must show that: (1) trial counsel's representation fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for counsel's errors, the result of the trial would have been different.  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064
; 
People v. Albanese
, 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1254 (1984).  

Under the first prong of the 
Strickland 
test, defendant must overcome a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " 
Strickland
, 466 U.S. at 689,80 L. Ed. 2d at 694-95
, 104 S. Ct. at 2065, quoting 
Michel v. Louisiana
, 350 U.S. 91, 101, 100 L. Ed. 83, 93
, 76 S. Ct. 158, 164 (1955). A defendant satisfies the second prong of 
Strickland
 if he can show that the trier of fact would not have found him guilty beyond a reasonable doubt had counsel not erred.  
People v. Caballero
, 126 Ill. 2d 248, 260, 533 N.E.2d 1089, 1091 (1989).  Where the defendant fails to prove prejudice, the reviewing court need not determine whether counsel's performance constituted less than reasonable assistance. 
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069
; 
People v. Flores
, 153 Ill. 2d 264, 283, 606 N.E.2d 1078, 1087 (1992).  

It is well settled that trial counsel's decision whether to present the testimony of a particular witness is within the realm of strategic choices that are generally not subject to an attack on grounds of ineffectiveness of counsel.  
People v. Tate
, 305 Ill. App. 3d 607, 612, 712 N.E.2d 826, 829 (1999).  However, tactical decisions made by counsel may be deemed to amount to ineffective assistance when counsel fails to present exculpatory evidence that would corroborate an otherwise uncorroborated defense. 
 People v. O'Banner, 
215 Ill. App. 3d 778, 790, 575 N.E.2d 1261, 1268 (1991); 
Tate
, 305 Ill. App. 3d at 612, 712 N.E.2d at 829.  

The statement made by Rucker at the suppression hearing, on which defendant relies, is not unequivocally exculpatory when taken in the appropriate context. 

"[MR. DECKER]:   Did you eventually give a statement to her about

either the gun or a F.O.I.D. card?

[RUCKER]: Yes.

[MR. DECKER]: Was that at the station?

[RUCKER]: Yes.

[MR. DECKER]: And before you gave that statement, were you given

Miranda rights then?

[RUCKER]: No.

[MR. DECKER]: And is there a reason why you gave a statement to

her at the station?

[RUCKER]: Yes, she said that me and my co-defendant were going

to be charged with the gun and he didn't know nothing about it.  I just showed,

I told her that I had a F.O.I.D. card."

Even if we were to interpret the statement to mean that Rucker told Officer Staggers about the FOID. card because he knew defendant did not know about the gun and was trying to prevent defendant from being charged with possession of it, as defendant suggests, we can not conclude that defendant suffered prejudice. 

Officer Staggers testified that Rucker told her he was carrying the gun to show defendant.   This would tend to show that defendant knew the gun was in the car and Rucker certainly would have been cross-examined by the State regarding this statement.  In addition, if counsel called Rucker, the State could have impeached Rucker with prior inconsistent statements.  Officer Staggers testified that after Rucker exited the vehicle he claimed ownership of the gun.  However, at the hearing on the motion to suppress, Rucker denied making this admission and testified that he told Officer Staggers, "I don't know of any gun" and reaffirmed on cross-examination that he "kept telling her, I don't know [about the gun]."  Had Rucker testified for defendant, Rucker's credibility would have been significantly diminished.  We cannot see how defendant suffered any prejudice as a result of counsel's strategic decision not to call Rucker as a witness.  

Defendant also contends that because he and codefendant Rucker were represented by the same attorney during their simultaneous bench trials, he was denied his right to conflict-free counsel.  

Defendant correctly asserts that as a criminal defendant, he is guaranteed the right to effective assistance of counsel under the sixth amendment.  
Cuyler v. Sullivan
, 446 U.S. 335, 343, 64 L. Ed. 2d 333, 343, 100 S. Ct. 1708, 1715 (1980).  This sixth amendment right also encompasses the right of a criminal defendant to have "undivided loyalty of counsel, free from conflicting interests or inconsistent obligations."  
People v. Thomas
, 131 Ill. 2d 104, 111, 545 N.E.2d 654, 656 (1989).  

In situations where there is joint representation of codefendants, as in the case at bar, a defendant who claims he received ineffective assistance of counsel at trial based on a conflict of interest has the burden of demonstrating that an actual conflict of interest was manifested at trial.  
People v. Vriner
, 74 Ill. 2d 329, 341, 385 N.E.2d 671, 676 (1978).  The defendant must point to some specific defect in counsel's strategy, tactics or decision making that is attributable to the actual conflict, as mere speculative or hypothetical conflicts are insufficient to demonstrate actual conflict of interest.
  People v. Dockery
, 248 Ill. App. 3d 59, 65, 618 N.E.2d 348, 353 (1993); 
People v. Berland
, 74 Ill. 2d 286, 301, 385 N.E.2d 649, 655 (1979). Actual conflicts of interest have been found to exist by Illinois courts in the following situations:

"(1) In a joint trial, the same attorney cannot represent two co-defendants

who have antagonistic defenses. (
People v. Wilder
  (1977), 48 Ill. App. 3d 13, 15

* * *.) (2) In a joint trial, a defendant whose testimony is antagonistic to the

interest of a co-defendant has a conflict of interest with that co-defendant. * * * 

[
(Wilder, 
48 Ill. App. 3d at 15.)]  (3) In a joint trial, where one defendant's out-of-court statement is introduced against the other defendant, there is an actual conflict of interest even though the declarent may deny making the statement.  In this situation, the defense has been impaired because the attorney for both defendants cannot

adequately impeach the defendant who made the statement.  (
People v. Cade
 (1981), 

97 Ill. App. 3d 354, 357 * * *.)  (4) Where an attorney successfully argues

for the inclusion of fingerprint evidence and the evidence tends to exculpate one

defendant but incriminate a co-defendant * * *.   
People v. Echols
 (1978),

74 Ill. 2d 319, 325 * * *." 
People v. Martinez
, 104 Ill. App. 3d 990, 992, 433 N.E.2d 981, 983-84 (1982).  

Defendant argues that an actual conflict of interest existed in this case because he and Rucker had antagonistic defenses.  Defendant asserts that in order to be acquitted of the offense, he had to argue that Rucker possessed the gun.  Similarly, for Rucker to be acquitted, he had to argue that defendant possessed the gun.  Defendant maintains that if he and Rucker had been represented by separate attorneys, his attorney would have been free to argue that Rucker possessed the gun.  However, because of the conflict, counsel was unable to make this argument thereby depriving defendant of effective assistance of counsel.

Defense counsel's strategy here was to suppress the statements made by Rucker and to attack the credibility of Officer Staggers.  While the motion was unsuccessful, counsel did rigorously cross-examine Office Staggers at the hearing and at trial regarding her incomplete reports, her inability to recollect the events of the evening and her inability to see defendant inside the vehicle.   Defense counsel also impeached Officer Staggers with prior testimony she had given at the preliminary hearing.  In addition, at the close of the State's case, counsel moved for a directed finding with respect to both defendants and argued that the evidence was insufficient to establish that either defendant had possession of the gun.  Counsel also argued the improbability of two individuals being followed by the police hiding a gun on the seat, rather than under the seat or in the glove box.  The trial court granted counsel's motion with respect to Rucker, but denied it with regard to defendant, stating:

"There's no testimony or even admission that at the date and time in

question, he had the gun, that he possessed the gun, and of course that's 

what the charge is about, possessing a gun, not ownership of the gun; so,

as to Rucker, finding of not guilty.

As to Grant, there is testimony that he was in possession of the 

gun and that it was found on his front passenger seat."

The trial court's findings undermine defendant's argument.   Rucker was acquitted based upon the insufficiency of the evidence before he or defendant ever had a chance to present his case in chief.   Even assuming 
arguendo
 that defendant and Rucker had to blame each other for possessing the gun, when defendant presented his case, Rucker had been acquitted and therefore no one remained against whom defendant could have an antagonistic defense.  See 
People v. Davilla
, 236 Ill. App. 3d 367, 386, 636 N.E.2d 93, 97 (1992).   At that point, defendant was not precluded by a conflict from implicating Rucker.  However, it is extremely unlikely that this strategy would have been successful given that the gun was found on the seat where defendant was sitting. We find that defense counsel was not inhibited by joint representation in this case.

Finally, defendant challenges the constitutionality of section 24-1.6(a)(1)(3)(A) of the aggravated unlawful use of a weapon statute.  720 ILCS 5/24-1.6(a)(1)(3)(A) (West 2000).  Defendant contends that this section violates state and federal substantive due process guarantees because it requires only a mental state of knowing, without further requiring a culpable mental state and results in innocent conduct being criminalized.  We disagree.

While this is an issue of first impression, we nevertheless begin by presuming that the statute in question here is constitutional, as we are to presume that all statutes are constitutional.  
People v. Miller, 
171 Ill. 2d 330, 333, 664 N.E.2d 1021 (1996)
.  
 As a result of this presumption, the party challenging the constitutionality of a statute bears the burden of demonstrating that a constitutional violation exists.
  People v. Lantz
, 186 Ill. 2d 243, 254, 712 N.E.2d 314, 319 (1999).  The legislature, pursuant to its police power, has wide latitude in prescribing penalties for criminal offenses, but this discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law.   
In re K.C.
,  186 Ill. 2d 542, 550, 714 N.E.2d 491, 496 (1999). 

Initially, we note that defendant states the incorrect standard of review here when he suggests that we review the statute 
de novo
.  When legislation is being challenged as failing to comply with substantive due process requirements, as in this case, and that legislation does not involve a fundamental constitutional right, we must determine whether the statute bears a rational relationship to a legitimate state goal.  
People v. Kimbrough
, 163 Ill. 2d 231, 242, 644 N.E.2d 1137, 1143-44 (1994).  More specifically, we are charged with determining " ' whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare. ' " 
People v. Bradley
, 79 Ill. 2d 410, 417, 403 N.E.2d 1029, 1031 (1980), quoting 
Heimgaertner v. Benjamin Electric Manufacturing Co.
, 6 Ill. 2d 152, 159, 128 N.E.2d 691, 695 (1955).   Only if the statute withstands this test can it be upheld.  
People v. Hamm
, 149 Ill. 2d 201, 216, 595 N.E.2d 540, 546 (1992).  

In an attempt to persuade us to find section 24-1.6(a)(1)(3)(A) unconstitutional, defendant analogizes section 24-1.6(a)(1)(3)(A) with other statutes that have been invalidated by our supreme court on substantive due process grounds.   In 
People v. Wick
, 107 Ill. 2d 62, 481 N.E.2d 676 (1985), defendant challenged the aggravated arson statute on the grounds that it was not rationally related to its intended purpose because it could be applied to innocent conduct.  The statute provided that a person committed aggravated arson when he knowingly damaged a building by fire and a fireman or policeman on the scene was injured.  
Wick
, 107 Ill. 2d at 64, 481 N.E.2d at 677.    Our supreme court found the statute unconstitutional, reasoning that while the purpose of the statute was to subject arsonists to a more severe penalty when a firefighter or police officer was injured as a result of their conduct, the actual statute was not reasonably related to that purpose because the aggravated arson statute did not require an unlawful purpose in setting a fire, as the definition of simple arson did.  The court stated, in part:

"Because aggravated arson as defined by the statute does not require

an unlawful purpose in setting a fire, however, the statute as presently

constituted sweeps too broadly by punishing innocent as well as 

culpable conduct in setting fires.  Under this statute, for example, a farmer

who demolishes his deteriorated barn to clear space for a new one is

liable for a Class X penalty if a fireman standing by is injured at the

scene.  If the statute's purpose is to provide a severe penalty for 

arsonists whose conduct results in personal injury to fireman or policemen,

the statute does not bear a reasonable relationship to its purpose because

the penalty is not limited to arsonists."  
Wick
, 107 Ill. 2d at 66, 481 N.E.2d at 678.

Similarly, in 
People v. Zaremba
, 158 Ill. 2d 36, 630 N.E.2d 797 (1994), our supreme court considered a constitutional challenge to a portion of the theft statute.   Section 16-1(a)(5) of the Criminal Code of 1961 made it a crime for an individual to "knowingly[ ] [o]btain[ ] or exert[ ] control over property in the custody of any law enforcement agency which is explicitly represented to him by any law enforcement officer or any individual acting in behalf of a law enforcement agency as being stolen."   Ill. Rev. Stat.1989, ch. 38, par. 16-1(a)(5).  The court recognized that this portion of the statute was designed to facilitate undercover fencing stings.  However, because it contained no culpable mental state and subjected potentially innocent persons to punishment, such as evidence technicians who took possession of theft proceeds from an arresting officer, the portion of the statute violated due process principles.  
Zaremba
, 158 Ill. 2d at 42-43, 630 N.E.2d at 799.  

Likewise, in 
People v. Wright
, 194 Ill. 2d 1, 740 N.E.2d 755 (2000), the defendant challenged the constitutionality of his convictions for failure to keep records under section 5-401.2 of the Illinois Vehicle Code (625 ILCS 5/5-401.2 (West 1996)).  Section 5-401.2 of the Vehicle Code required certain persons licensed under the Code to maintain records, at their place of business, relating to the acquisition and disposition of vehicles and parts for three years.  This section further provided that "[a]ny person who knowingly fails to keep the records required by this Section or who knowingly violates this Section shall be guilty of a Class 2 felony."  625 ILCS 5/5-401.2(i) (West 1996).  Section 5-100-1 contained a statement that in enacting section 5-401.2 the legislature intended "to establish a system of mandatory licensing and record keeping which will prevent or reduce the transfer or sale of stolen vehicles or their parts within this State."  625 ILCS 5/5-100-1 (West 1996).  

Our supreme court held that section 5-401.2 could not withstand scrutiny under the rational basis test because the section was not reasonably designed to achieve the above-mentioned purpose because it had the potential to punish innocent conduct.  

"Under section 5-401.2, even a slight lapse in record keeping by an individual with no criminal purpose may be punished as a Class 2 felony.  For example, an individual who knowingly fails to record the color of a single vehicle could be convicted of failure to keep records, even if that failure were caused by a disability, family crisis, or incompetence."  
Wright
, 194 Ill. 2d at 28, 740 N.E.2d at 768-69.

In the case 
sub judice
, section 24-1.6(a)(1)(3)(A) of the aggravated unlawful use of a weapon statute provides:

"A person commits the offense of aggravated unlawful use of a weapon

when he or she knowingly:

(1) [c]arries on or about his or her person or in any vehicle or concealed 

on or about his or her person except when on his or her land or in his or 

her abode or fixed place of business any pistol, revolver, stun gun or taser or

other firearm; [and]

* * *

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately

accessible at the time of the offense[.] 720 ILCS 5/24-1.6(a)(1)(3)(A) (West 2000).

Defendant suggests that similar to the statutes invalidated in 
Wick
, 
Zaremba
 and 
Wright
, section 24-1.6(a)(1)(3)(A) requires a "knowing" mental state without further requiring any culpable mental state and is therefore unconstitutional.  

Contrary to defendant's assertion, the statute in question here does require a mental state.  Section 24-1.6(a)(1) expressly provides that the mental state for aggravated unlawful use of a weapon is knowledge.   As the statute is unambiguous, we must enforce it as enacted and may not depart from the language by creating exceptions, limitations or conditions not expressed by the legislature.
  People v. Woodard
, 175 Ill. 2d 435, 443, 677 N.E. 2d 935 (1997).  Furthermore, defendant incorrectly interprets the holdings in 
Wick
,
 Zaremba
 and 
Wright 
when he argues that when a statute contains knowledge, without a further mental state, the statute is subject to constitutional attack.  
In 
Wright
 our supreme court discussed knowledge as a mental state
 and ruled:

"[i]n 
Zaremba
 [and] 
Wick
, * * * we did not read the mental state of knowledge plus criminal purpose into the statutes at issue because they expressly provided 

knowledge as the mental state.  Instead, we held that these statutes were 

invalid.  We must do the same in this case."  
Wright
, 194 Ill. 2d at 29-30, 740 N.E. 2d at 769. 

Satisfied that the mental state of knowledge, as included in section 24-1.6(a)(1)(3)(A), without the requirement of a further mental state meets the requirements of due process, we move on to determine whether the statute is rationally related to a legitimate state goal.  

To do so, we must look to the intent of the legislature in enacting the aggravated unlawful use of a weapon statute.  Defendant and the State disagree on the purpose of the statute.  Defendant suggests that the purpose of the statute was to limit gun possession by members of street gangs and organized crime, by providing the prosecutors with a vehicle to charge a felony rather than a misdemeanor offense.  The State contends that the purpose of the statute was to prevent the very situation that occurred here—to prevent any person from being allowed to have a loaded weapon easily accessible in a vehicle when stopped by police officers. 

We have reviewed the legislative transcript relating to this statute.  Certainly, the legislature considered gang violence in enacting this statute.  However, based on the legislative transcript, it is clear that the goal of the legislature in enacting the aggravated unlawful use of a weapon statute (720 ILCS 5/24-1.6 (West 2000)) was to allow the State to seek a harsher penalty for any person in the State of Illinois, who does not fall under a specific exemption, from carrying a loaded weapon in the passenger compartment of his or her vehicle because of the inherent dangers to police officers and the general public.  This is so even if the person carrying the weapon has no criminal objective.

We find that section 24-1.6(a)(1)(3)(A) is reasonably designed to achieve its purpose and are unpersuaded by defendant's argument that the statute potentially allows for punishment of innocent conduct.  By way of example, defendant argues that a Good Samaritan who happens upon a loaded gun, puts it in his vehicle, drives to the police station and is stopped for speeding may be punished as a felony offender.  Similarly, defendant contends that a hunter who receives a call that an emergency has arisen at home,  returns to his car and drives away with the loaded, uncased gun on the seat next to him and is pulled over for speeding is liable for a felony offense.   There is nothing in the facts provided by defendant, nor could we imagine any,  that would allow us to characterize either the Good Samaritan's or the hunter's conduct as innocent.  Both the Good Samaritan and the hunter in defendant's scenario knew that they were placing a loaded weapon into the passenger compartment of their vehicles.  To subject them to punishment pursuant to section 24-1.6(a)(1)(3)(A) would be not only appropriate but proper.  Furthermore, we note that section 24-2 (720 ILCS 5/24-2 (West 2000)) lists, exhaustively, those persons and those situations in which a person knowingly carrying a loaded, uncased, easily accessible weapon would be exempt from punishment under section 24-1.6.  Neither the Good Samaritan nor the hunter falls within those exemptions and therefore under the scenarios that defendant posits, both  potentially could be charged with felony offenses. 

Unfortunately we live in a world where innocent victims are shot at through the windows of passing vehicles, where drivers experiencing "road rage" shoot at other drivers on our thoroughfares, and where the safety of a police officer effectuating a routine traffic stop is compromised by the presence of accessible, loaded weapons.   When one has a loaded weapon immediately accessible, he or she can use that weapon at a moment's notice and place other unsuspecting citizens in harm's way.  This is precisely the type of evil that the statute in question here was designed to prevent. 

Accordingly, we hold that section 24-1.6(a)(1)(3)(A) of the aggravated unlawful use of a weapon statute does bear a reasonable relationship to the public interest served, and the means adopted are reasonable to accomplish the desired objective.  

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

THEIS, P.J., and HARTMAN, J., concur
.

FOOTNOTES
1:
Shawn Rucker is not a party to this appeal. 

2:
Defendant was not a party to the motion to suppress statements.  However, the hearing on the motion was heard immediately preceding trial where defendant and Rucker were tried simultaneously.  The testimony offered by Officer Staggers at the hearing on the motion was admitted at trial by way of stipulation.