FOURTH DIVISION

September 30, 2004

No. 1-03-1888

THE PEOPLE OF THE STATE OF ILLINOIS, )    Appeal from

) the Circuit Court

Plaintiff-Appellee, ) of Cook County.

)   

v. )  No. 02 C6 609998 

)

ANTHONY SMYTHE, )    Honorable

) Camille E. Willis,

Defendant-Appellant. )  Judge Presiding.

JUSTICE THEIS delivered the opinion of the court:

Following a jury trial, defendant Anthony Smythe was convicted of aggravated unlawful use of a weapon (UUW) and sentenced to one-year probation.
(footnote: 1)  On appeal, he contends (1) he was not proven guilty beyond a reasonable doubt where the statute requires proof that the weapon was “uncased” (720 ILCS 5/24-1.6(a)(1)/(3)(A) (West 2002)), and the evidence submitted demonstrated that the handgun was cased; and (2) pursuant to section 5/5-4-3 of the Unified Code of Corrections (the Code) (730 ILCS 5/5-4-3 (West 2002)), the compulsory extraction and perpetual storing of his DNA violated his fourth amendment right to be free from unreasonable searches and seizures.  For the following reasons, we affirm.

BACKGROUND

At trial, Officer Paul Morache testified that at approximately 4:30 p.m. on May 19, 2002, he was patrolling in a marked squad car at the intersection of 162nd and Ellis Street in South Holland.  Morache explained that he was running registration checks on the license plates of random vehicles when he determined that the license plate of the Ford Expedition located in front of him was registered to a Porsche.  Morache questioned the driver, whom he later identified in court as defendant.  Morache asked defendant for his driver’s license and proof of insurance.  After handing over his license, defendant told Morache that he was a Cook County sheriff police deputy, although he failed to produce a badge or other proof of identification.  Morache then determined that defendant had a suspended driver’s license.  Accordingly, he re-approached the vehicle, asked defendant to step out, informed him of the status of his suspended driver’s license, and took him into custody.  

At that point, Morache asked defendant if there were any weapons in the vehicle, and defendant affirmatively replied.  Morache testified that he placed defendant in the back seat of the squad car and returned to the vehicle to find what would later be identified in court as a SIG Sauer nine-millimeter automatic pistol.  The gun was located underneath the driver’s seat of the Expedition in a snapped holster.  The holster did not fully enclose the gun, but rather left portions of the gun exposed.  Upon returning to the squad car, Morache unsnapped the holster to remove the gun, emptied a bullet from the gun’s chamber, removed the gun’s ammunition (the clip), and determined that the gun was not stolen.  After retrieving the gun, Morache transported defendant to the police station, determined that he was not a Cook County sheriff police deputy, and read defendant his 
Miranda
 rights.  At that point, defendant admitted to Morache that he was not a Cook County police deputy but, rather, he was an armed security officer on suspension.          

Defendant testified that he became an armed security guard in 1996.  At that time, he purchased a gun and stored it in several places including under his mattress, in his nightstand, and then in his basement.  After his basement had been broken into in March 2002, he stored the gun in his Expedition.  From March 2002 until May 19, 2002, defendant did not move the gun from its location underneath the driver’s seat of the Expedition.  Defendant testified that the gun was unloaded, inside of a snapped-shut holster, and the gun’s clip was inside the center console between the driver and passenger seats.  Defendant further testified that the only way to get the gun out from underneath the seat would have been to take it out from the backseat. 

Defendant further testified that, o
n May 19, 2002, he was driving the Expedition in South Holland when Officer Morache pulled him over and told him his driver’s license was suspended.  Defendant stated that he had forgotten that the gun was underneath the seat, but remembered that there was a weapon in the car when Morache began questioning him.  From the backseat of the squad car, defendant saw Morache pull an object out from underneath the driver’s seat, and as Morache was walking back to the squad car, defendant identified the object as his gun.  Defendant believed that all of the bullets were in the clip at the time Morache brought the gun back to the squad car. 

The jury then found defendant guilty of one count of aggravated UUW.  After the court denied defendant’s motion for judgment notwithstanding the jury’s verdict and motion for a new trial, the court sentenced defendant to one-year probation.

ANALYSIS

Defendant contends that he was not proven guilty beyond a reasonable doubt of aggravated UUW because the evidence was insufficient to show that his gun was “uncased” where it was undisputed that the police discovered the gun inside of a holster that was snapped-shut.  Specifically, defendant argues that the failure to show that the gun was uncased requires that we reduce defendant’s felony conviction to the misdemeanor and lesser-included offense of UUW (720 ILCS 5/24-1 (West 2002)), and remand for re-sentencing within the Class A misdemeanor range.  

In resolving a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Evans
, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 948 (2004).  However, to the extent that we are asked to interpret the meaning of the statutory term “uncased” (720 ILCS 5/24-1.6(a)(1)/(3)(A) (West 2000)), we apply a 
de novo
 standard of review to that determination.  
People v. Lamborn
, 185 Ill. 2d 585, 590, 708 N.E.2d 350, 354 (1999).

 A person commits the offense of aggravated UUW in Illinois by knowingly carrying a firearm in a vehicle that was uncased, loaded, and immediately accessible at the time of the offense, unless the person was carrying the firearm on his or her land, abode, or fixed place of business.  720 ILCS 5/24-1.6(a)(1)(3)(A) (West 2002).  In the present case, defendant does not dispute that the gun was loaded and immediately accessible.  Rather, the question here is whether defendant’s gun was “uncased.”  The term “uncased” is not explicitly defined in the statute, and therefore the court will assume that the word has its ordinary and popularly understood meaning.  
People v. Bailey
, 167 Ill. 2d 210, 229, 657 N.E.2d 953, 962 (1995).  We are also mindful that our primary objective when construing the meaning of a statute is to ascertain and give effect to the true intent of the legislature.  
In re Detention of Lieberman
, 201 Ill. 2d 300, 308, 776 N.E.2d 218, 223 (2002).  All provisions of a statute are to be viewed as a whole, and words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute.  
Lieberman
, 201 Ill. 2d at 308, 776 N.E.2d at 223
.  

Webster’s dictionary defines the term “case” as “a box or receptacle to contain or hold something.”  Webster’s Third New International Dictionary 346 (1986).  Additionally, in subsection (c)(iii) of the statute, the legislature specifically provided that the offense of aggravated UUW does not apply to the transportation or possession of weapons that are “unloaded and enclosed in a case, firearm carrying box, shipping box, or other container.”  720 ILCS 5/24-1.6(c)(iii) (West 2002).   To “enclose” means “to envelop” (Webster’s Third New International Dictionary 746 (1986)), and to “envelop” means “to enclose completely with a garment or other covering” (Webster’s Third New International Dictionary 759 (1986)).  Thus, given the plain meaning of the term in light of all of the relevant provisions of the statute, it is evident that the term “case” refers to an item that completely encloses the weapon in a firearm carrying box, shipping box, or other container.  

Here, the evidence revealed that the gun was found underneath the driver’s seat in a holster that was snapped-shut and partially exposed.  A holster is traditionally defined as “a leather case for a pistol that is often open at the top to facilitate quick withdrawal, that often conforms to the pistol’s shape, and that is usually carried at the belt or under one arm or often at the front of a saddle.”  Webster’s Third New International Dictionary 1081 (1986).  Accordingly, a rational trier of fact could have found that defendant’s holster was “uncased,” as the butt of the gun was left exposed for ease of access and did not completely enclose the gun.  

Moreover, defendant’s argument that a holster is a “case” lacks merit because it is antithetical to the purpose of the aggravated UUW statute.  The legislature’s purpose in enacting the aggravated UUW statute was 
to prevent any person from carrying a loaded weapon on his person or in his vehicle due to "the inherent dangers to police officers and the general public.”
  
People v. Grant
, 339 Ill. App. 3d 792, 806, 791 N.E.2d 100, 11 (2003); See also 
People v. Marin
, 342 Ill. App. 3d 716, 724, 795 N.E.2d 953, 959 (2003); 
People v. McGee
, 341 Ill. App. 3d 1029, 1037, 794 N.E.2d 855, 861 (2003); 
People v. Pulley
, 345 Ill. App. 3d 916, 803 N.E.2d 953 (2004); 
People v. Spivey
, No. 1-03-1810 (Ill. App. Ct. Aug. 5, 2004).  As discussed in 
Grant
, this statute was designed to prevent the situation where one has a loaded weapon that is immediately accessible, and thus can use it at a moment’s notice and place other unsuspecting citizens in harm’s way.  
Grant
, 339 Ill. App. 3d at 807, 791 N.E.2d at 112.  

Defendant’s interpretation of the statute would permit citizens to carry loaded, immediately accessible guns in holsters on the public streets of Illinois.  This scenario out of the Wild West is not what the legislature had in mind when seeking to 
prevent
 the felony situation where a loaded, immediately accessible weapon could be used at a moment’s notice and place other unsuspecting citizens in harm’s way.  
Grant
, 339 Ill. App. 3d at 807, 791 N.E.2d at 112.

Even if we were to concede that the term “uncased” is ambiguous, defendant’s argument lacks merit when examining the legislative history.  When the language used is susceptible to more than one equally reasonable interpretation, the court may look to additional sources to determine the legislature’s intent.  
People v. Hicks
, 164 Ill. 2d 218, 222, 647 N.E.2d 257, 260 (1995).  It is evident from the legislative history that the legislature intended “uncased” to mean that the weapon is not completely enclosed in a container.  During the legislative debate on Public Act 91-690, Representative Cook specifically defined the term “case” as follows:

REPRESENTATIVE COOK: “* * * And, John, why don’t I go ahead and give you a definition of what ‘case’ is.  Case is defined in the Wildlife Code, Chapter 520, ‘case means a container specifically designed for the purpose of housing a gun or bow and arrow device which completely encloses such gun or bow and arrow device by being zipped, snapped, buckled, tied or otherwise fashioned 
with no portion of the gun or bow and arrow device exposed.’ 
 91st
 Ill. Gen. Assem., House Proceedings, April 10, 2000, 50-51 (statements of Representative Cook) (Emphasis added).

Therefore, the legislative history also establishes that the legislature intended for the gun to be enclosed in a container specifically designed for the purpose of housing a gun and that leaves no part of the gun exposed. 

We further reject defendant’s reliance on the dissent in 
People v. Bartimo
, 345 Ill. App. 3d 1100, 1104, 803 N.E.2d 596, 601 (2004).  In 
Bartimo
, the defendant’s conviction for UUW was affirmed by the majority where the gun was in a nylon holster that had a full clip of ammunition in its front pocket and was located in a laundry basket in the back seat of the car.  The defendant did not argue that the gun was not “uncased” but, rather, argued that it was not immediately accessible due to its placement underneath a pile of clothes in a laundry basket.  The dissent, 
sua sponte
, raised the issue of whether the gun was cased, and furthermore, the dissent has no precedential value.  Accordingly, we need not consider it. 

We next address defendant’s contention that the compulsory extraction of his DNA pursuant to section 5-4-3 of the Code (730 ILCS 5/5-4-3 (West 2002)) constitutes an unreasonable search, violating his fourth amendment rights.  We recently rejected a similar challenge to this statute and held that section 5-4-3 is constitutional in 
People v. Ramos
, No. 1-03-2963 (Ill. App. Ct. September 30, 2004).  We continue to adhere to the holding of 
Ramos
 and similarly reject defendant’s argument.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.      

GREIMAN and QUINN, J.J., concur.

FOOTNOTES
1: Defendant’s original trial on January 29, 2003, ended in a mistrial because the jury failed to reach a verdict.  He was subsequently re-tried on May 7, 2003.