FOURTH DIVISION
FILED: November 9, 2006

No. 1-05-0619

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Criminal Division |
| Plaintiff-Appellee, | ) | |
| | ) | No. 03 CR 24964 |
| v. | ) | |
| | ) | |
| JEFFREY WILLIAMS, | ) | Honorable Timothy J. Chambers, |
| | ) | Judge Presiding |
| Defendant-Appellant. | ) | |

JUSTICE MURPHY delivered the opinion of the court:

Defendant, Jeffrey Williams, was convicted of aggravated unlawful use of a weapon

pursuant to section 24-1.6(a) of the Criminal Code of 1961 (720 ILCS 5/24-1.6(a) (West 2004))

in 2004. On appeal, defendant argues that (1) he was not proven guilty beyond a reasonable

doubt of aggravated unlawful use of a weapon; (2) he was denied a fair and impartial jury

because neither defense counsel nor the court asked the jury about defendant's constitutional

rights; and (3) a $100 fee was improperly assessed. For the reasons stated below, we affirm.

## I. BACKGROUND

Defendant was charged with aggravated unlawful use of a weapon. During jury

selection, the trial court asked each juror individually if he or she would have a problem with

returning a guilty verdict if defendant's guilt was proven beyond a reasonable doubt or a not-

guilty verdict if defendant's guilt was not proven beyond a reasonable doubt. The trial court excused jurors who indicated they had a problem signing a guilty verdict. The court also asked potential jurors whether they or their families were victims of a crime and whether they had served on juries before. The court informed the potential jurors that defendant was presumed innocent and that the State had the burden of proving defendant guilty beyond a reasonable doubt. In addition, the court told the potential jurors that defendant had no obligation to testify on his own behalf or call any witnesses in his defense and the fact that he did not testify could not be held against him. Although defense counsel questioned the potential jurors, neither she nor the trial court inquired whether they understood the principles articulated by the trial court. The court repeated these principles when it instructed the jury before deliberations.

At trial, Park Ridge police officer Matthew McGannon testified that on July 5, 2003, he pulled defendant over after he observed defendant driving his vehicle into the opposite lane. The officer discovered that defendant's license was suspended and placed him under arrest for driving with a suspended license.

The officer did an inventory search of defendant's vehicle and found a loaded, 9-millimeter pistol with one round in the chamber. The holstered pistol was in a leather, zippered compartment located to the right of the back passenger seat. The compartment was part of the vehicle and was unmovable. The officer also found a bulletproof vest, handcuffs, a baton, and security uniforms in the car. Defendant told the officer that he was returning from work as a security guard, but when the officer asked for additional information about the security company, defendant admitted that the gun was his, not the security company's. The officer later discovered

that defendant had been terminated from employment with the security company in June 2003.

The jury found defendant guilty of aggravated unlawful use of a weapon.  He was sentenced to 18 months' probation with the first 60 days in custody.  The court also assessed fines and costs of $729, which included a $100 fine under section 5-9-1.10 of the Unified Code of Corrections (730 ILCS 5/5-9-1.10 (West 2004)).

## II.  ANALYSIS

### A.  Sufficiency of the Evidence

Defendant first contends that the State failed to prove him guilty beyond a reasonable doubt of aggravated unlawful use of a weapon because the weapon was not "uncased." Therefore, he claims, we should reduce his conviction to the lesser-included charge of unlawful use of a weapon pursuant to section 24-1(a)(4)(iii) of the Criminal Code of 1961 (Code)  (720 ILCS 5/24-1(a)(4)(iii) (West 2004)) and remand the case for resentencing.

"It is the jury's function to determine the accused's guilt or innocence, and this court will not reverse a conviction unless the evidence is so improbable as to justify a reasonable doubt of defendant's guilt." *People v. Frieberg*, 147 Ill. 2d 326, 359 (1992).  When a defendant challenges the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *People v. Woods*, 214 Ill. 2d 455, 470 (2005).  A court of review will not overturn the fact finder's verdict unless "the proof is so improbable or unsatisfactory that there exists a reasonable doubt as to the defendant's guilt." *People v. Maggette*, 195 Ill. 2d 336, 353 (2001).  However, to the extent that

we are asked to interpret the statutory term "uncased," our review is *de novo*. *People v. Rivera*, 198 Ill. 2d 364, 368 (2001).

A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly carried a firearm that was uncased, loaded, and immediately accessible at the time of the offense, unless the person was carrying the weapon on his or her land, abode, or fixed place of business. 720 ILCS 5/24-1.6(a) (West 2004). Defendant disputes whether the gun was "uncased" when it was in the zippered, leather compartment. Although the gun was also in a holster, defendant does not argue on appeal that the holster was a "case."

The Criminal Code does not define "uncased"; however, the court defined the term in *People v. Smythe*, 352 Ill. App. 3d 1056 (2004). In *Smythe*, a gun was found under the driver's seat of the car that the defendant was driving, and the holster left portions of the gun exposed. After being convicted of aggravated unlawful use of a weapon, the defendant argued that the evidence was insufficient to show that the gun was "uncased." *Smythe*, 352 Ill. App. 3d at 1058.

The court noted the dictionary definition of "case" was "'a box or receptacle to contain or hold something.'" *Smythe*, 352 Ill. App. 3d at 1059, quoting Webster's Third New Ieternational Dictionary (1986). Further, subsection (c)(iii) of the aggravated unlawful use of a weapon statute specifically provides that the section does not apply to the transportation or possession of weapons that "are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container." 720 ILCS 5/24-1.6(c)(iii) (West 2004). Given the plain meaning of the term in light of the relevant provisions of the statute, the court held that the term "case" refers to an item that completely encloses the weapon in a firearm carrying box, shipping box, or other container.

*Smythe*, 352 Ill. App. 3d at 1059. Even assuming that the term "uncased" was ambiguous, the legislative history of Public Act 91-690 "also establishe[d]" that the legislature intended for the gun to be enclosed in "a container specifically designed for the purposes of housing a gun and that leaves no part of the gun exposed." *Smythe*, 352 Ill. App. 3d at 1061, citing 91st Ill. Gen. Assem., House Proceedings, April 10, 2000 at 50-51 (statements of Representative Cross). Because the butt of the gun was left exposed, the court found that the defendant's gun was "uncased." *Smythe*, 352 Ill. App. 3d at 1060. Defendant claims that we should not follow the discussion in *Smythe* relating to the legislative history of the statute because it was *dictum*; however, we reject his argument because the definition of "case," unlike a "remark or opinion uttered by the way" (*Cates v. Cates*, 156 Ill. 2d 76, 80 (1993)) that is characteristic of *obiter dictum*, was the main issue in that case.

In *People v. Cameron*, 336 Ill. App. 3d 548 (2003), the court rejected the defendant's argument that a glove compartment qualified as an "other container" under the container exemption contained in section 24-1(a)(4) of the Code. The court, applying the doctrine of *ejusdem generis*, noted that when a statutory clause specifically describes several classes of things and then excludes "other things," the word "other" is interpreted as meaning "other such like." *Cameron*, 336 Ill. App. 3d at 551. A glove compartment is fundamentally different from a case, firearm box, or shipping box because those receptacles are portable, while a glove compartment is a fixed area on a vehicle's dashboard. *Cameron*, 336 Ill. App. 3d at 551. Therefore, a glove compartment is not an "other container." *Cameron*, 336 Ill. App. 3d at 551.

Applying the principles articulated in *Smythe* and *Cameron*, we find that defendant's

weapon was "uncased" when it was inside the unmovable, zippered compartment attached to the backseat of defendant's vehicle. First, the leather compartment was not intended to house a gun, so it was not a "case." See *Smythe*, 352 Ill. App. 3d at 1061. Second, pursuant to the doctrine of *ejusdem generis*, "other container" must be construed to refer to containers similar to the case, firearm carrying box, or shipping box listed in the statute. Although the compartment, unlike the holster in *Smythe*, may have completely enclosed the gun, it lacked the portability inherent in a case, firearm carrying box, or shipping box because it was a fixed, unmovable part of the vehicle. See *Cameron*, 336 Ill. App. 3d at 551. Contrary to defendant's argument, it would be illogical for the legislature to list three specific portable containers only to intend for the fourth to be of a much broader scope. Because it is fundamentally different from a case, firearm carrying box, or shipping box, the zippered compartment, like a glove compartment, cannot be considered an "other container."

Defendant contends that a construction of the statute exempting portable containers under section 24-1(a)(4) contradicts the legislature's intent of preventing immediate access to weapons because portability makes the weapon more accessible. However, storage of a weapon in a portable container that completely encloses it allows it to be transported safely. On the other hand, removing defendant's weapon from the fixed compartment in the car and moving it to another location would necessitate the weapon being uncased and, hence, unsafe. This situation would implicate the *Smythe* court's concern about having citizens carrying loaded, immediately accessible guns on the public streets of Illinois.

Defendant urges us to follow the dissent in *People v. Bartimo*, 345 Ill. App. 3d 1100,

1114-15 (2004) (Cook, J., dissenting). In *Bartimo*, the defendant was found guilty of unlawful use of a weapon. On appeal, the court held that the trial court could have found the weapon was immediately accessible. The dissent raised the issue of whether the gun was enclosed in a case. We need not consider the dissent because it has no precedential value. *Smythe*, 352 Ill. App. 3d at 1061.

Because defendant's weapon was "uncased," we find that any rational trier of fact could have found him guilty of aggravated unlawful use of a weapon.

### B. Selection of a Fair and Impartial Jury

Defendant argues that he was denied effective assistance of counsel when his attorney neglected to ask potential jurors about constitutional principles related to the presumption of innocence, burden of proof, and the decision to present a case on the defendant's behalf. He argues in the alternative that the trial court erred by failing to ask those questions.

### 1. *Effective Assistance of Counsel*

Defendant relies on *People v. Zehr*, 103 Ill. 2d 472, 477 (1984), in support of his argument that his trial counsel was ineffective. In *Zehr*, the court held that "essential to the qualification of jurors in a criminal case is that they know that the defendant is presumed innocent, that he is not required to offer any evidence on his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify on his own behalf cannot be held against him." *Zehr*, 103 Ill. 2d at 477. If a juror has a bias against any of these basic guarantees, an instruction given at the end of the trial will have little effect. *Zehr*, 103 Ill. 2d at 477.

The supreme court amended Rule 431(b) in 1997 to ensure compliance with the

requirements of *Zehr*. 177 Ill. 2d R. 431, Committee Comments. Rule 431(b) provides that, if requested by the defendant, the court shall ask, either individually or in a group, whether potential jurors understand the *Zehr* principles. 177 Ill. 2d R. 431(b).

A defendant alleging ineffective assistance of counsel must demonstrate that counsel's representation *fell below an objective standard of reasonableness* and that, but for counsel's errors, there was a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). *There is a strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. Strickland*, 466 U.S. 668 at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2065. A failure to satisfy either prong precludes a finding of ineffective assistance. *People v. Patterson*, 192 Ill. 2d 93, 107 (2000).

Defendant's ineffective assistance claim fails because he is unable to establish the prejudice prong. Officer McGannon testified that he found the loaded gun in defendant's car, and no evidence adduced at trial contradicted his testimony. Furthermore, defendant admitted to Officer McGannon that the gun was his. Defendant argued that the weapon was not "uncased"; however, we found above that the compartment attached to defendant's vehicle was not a "case" or "other container." In addition, although the defense investigator testified that defendant could not reach the compartment while seated in the driver's seat, the gun was immediately accessible because defendant could have accessed the gun by leaning into the backseat. Because of the overwhelming evidence of defendant's guilt, defendant cannot show a reasonable probability that the outcome of the case would have been different if defense counsel had questioned jurors about

the *Zehr* principles.

Defendant cites *People v. Pearson*, 356 Ill. App. 3d 390 (2005), *appeal allowed*, 216 Ill. 2d 720 (2005), in support of his claim of ineffective assistance. In *Pearson*, the court held that defendant satisfied the first prong of the *Strickland* test because defense counsel's failure to request or ask the Rule 431(b) questions was objectively unreasonable. *Pearson*, 356 Ill. App. 3d at 398. However, the court found that the defendant was not prejudiced by the error because of the strength of the State's case. *Pearson*, 356 Ill. App. 3d at 398. Similarly, here, the State's case against defendant was strong; this does not qualify as a "case where the evidence is close" that the *Pearson* court left open for possible reversal. *Pearson*, 356 Ill. App. 3d at 399.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered if it is easier to dispose of an ineffective assistance claim on the ground of insufficient prejudice. *People v. Green*, 298 Ill. App. 3d 1054, 1061 (1998). In *People v. Foreman*, 361 Ill. App. 3d 136, 143 (2005), for example, the court did not analyze the first prong where the case was not closely balanced. "Because of the overwhelming evidence of defendant's guilt, defendant cannot show a reasonable probability that the outcome of the case would have been different had counsel questioned the potential jurors regarding the *Zehr* principles." *Foreman*, 361 Ill. App. 3d at 143.

Accordingly, we find that defendant was not denied effective assistance of counsel when his trial counsel failed to request questions on the *Zehr* principles or to question the jurors herself.

### 2. *Trial Court's Duty*

9

Defendant argues in the alternative that the trial court erred by failing to ask whether the jury understood and accepted the constitutional principles in *Zehr*.

First, we note that defendant waived this issue when he failed to raise it in his motion for new trial. *People v. Pinkney*, 322 Ill. App. 3d 707, 715 (2000). He claims that we should address his argument under the plain error exception to the waiver rule. 134 Ill. 2d R. 615(a). Nonpreserved errors may be reviewed on appeal if the evidence is closely balanced or where the errors are of such a magnitude that the defendant was denied a fair and impartial trial. *People v. Nieves*, 192 Ill. 2d 487, 502-03 (2000).

Rule 431(b) provides, "If requested by the defendant, the court shall ask each potential juror, either individually or in a group," whether he or she understand the *Zehr* principles enumerated above. 177 Ill. 2d R. 431(b). Rule 431(a) establishes that the trial court must conduct *voir dire* examination of prospective jurors by asking questions it thinks appropriate and "touching upon their qualifications to serve as jurors in the case at trial." 177 Ill. 2d R. 431(a). The court is also required to acquaint prospective jurors with the general duties and responsibilities of jurors. 177 Ill. 2d R. 431(a).

Construction of supreme court rules is comparable to the construction of statutes. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002). Our primary purpose in construing a rule, like a statute, is to ascertain and give effect to the intent of its drafters. *In re Estate of Rennick*, 181 Ill. 2d 395, 404-05 (1998). The most reliable indicator of intent is the language used, which should be given its plain and ordinary meaning. *Rennick*, 181 Ill. 2d at 405.

The plain language of Rule 431(b) defeats defendant's argument. Subsection (b)

specifically provides that the court "shall" ask each potential juror about the four *Zehr* principles "[i]f requested by the defendant." 177 Ill. 2d R. 431(b). The rule does not require the judge to ask the questions unless defendant's counsel has asked the court to do so.

In *Pearson*, the trial court questioned potential jurors about their experience with crime and the legal system. The court also asked whether the potential jurors could sign a verdict form of guilty if the State met its burden of proof or a not-guilty form if the State failed to meet its burden. The court did not ask potential jurors about the presumption of innocence, whether they understood that the defendant had no duty to present evidence, or whether they would hold the defendant's decision not to testify against him, nor did the court's preliminary comments contain any direct or indirect reference to these principles. On appeal, the court held that Rule 431(b) did not impose a duty on the trial court to ask jurors the questions in Rule 431(b) *sua sponte*. *Pearson*, 356 Ill. App. 3d at 397. "We have found no Illinois decision creating a judge's *sua sponte* duty to ask any particular question during *voir dire*, no matter how significant the answer might be." *Pearson*, 356 Ill. App. 3d at 396.

However, courts have disagreed on whether Rule 431(a) imposes a *sua sponte* duty on a trial court to ask about the principles enumerated in subsection (b). Asserting that "[a]ll of Supreme Court Rule 431 [citation] is on the table in this case," the *Pearson* court found that Rule 431(a) requires trial judges to inform prospective jurors about a defendant's basic rights as set out in Rule 431(b) so they will be informed of their "'general duties and responsibilities.'" *Pearson*, 356 Ill. App. 3d at 400, quoting 17 Ill. 2d R. 431. Citing potential juror bias against the presumption of innocence, the court found that selecting jurors "who have not heard anything

11

about three of the four basic rights contained in Rule 431(b) is 'an error of such gravity that it threatens the very integrity of the judicial process.'" *Pearson*, 356 Ill. App. 3d at 402, quoting *People v. Blue*, 189 Ill. 2d 99, 138 (2000). The conviction was reversed and the case was remanded for a new trial.

In *Foreman*, the court asked the potential jurors as a group whether they could sign a guilty verdict form if the State met its burden or a not-guilty form if the State failed to meet its burden. It questioned potential jurors who expressed doubt about their ability to do either. In addition, the court asked about each potential juror's prior jury experience and whether they or their families had been a victim of a crime or been involved in a lawsuit. After the jury was empaneled, the court informed them that the defense did not have a burden of presenting evidence. The defendant, relying on *Pearson*, argued on appeal that the trial court violated Rule 431(a) when it failed it inform potential jurors about the *Zehr* principles during *voir dire*.

The *Foreman* court agreed with the conclusion in *Pearson* that the change from "may" to "shall" in Rule 431(a) indicated that after the amendment, a trial court is required to acquaint prospective jurors with the general duties and responsibilities of jurors. *Foreman*, 361 Ill. App. 3d at 146. However, it disagreed with the conclusion that the supreme court "would, in subsection (b), leave it to defense counsel to decide whether the trial court should inquire into the jurors' understanding of the *Zehr* principles but would, in subsection (a), make the trial court's failure to inform the jurors of those principles reversible error, even absent a request by defense counsel." *Foreman*, 361 Ill. App. 3d at 146. If the supreme court had intended to require the trial court to generally inform potential jurors of the principles articulated in

12

subsection (b), it would have listed those principles in subsection (a) or combined subsections (a) and (b). *Foreman*, 361 Ill. App. 3d at 147.

We agree with the *Foreman* court that Rule 431(a) does not require the trial court to ask potential jurors about the *Zehr* principles in the absence of a request by defense counsel because the *Pearson* court's construction of subsection (a) would render subsection (b) superfluous. *Foreman*, 361 Ill. App. 3d at 146. Furthermore, this case is more analogous to *Foreman* than *Pearson* because in *Pearson*, the judge's preliminary comments did not contain <u>any</u> reference to the presumption of the defendant's innocence or the principles that the defendant is not required to offer any evidence or that his failure to testify could not be held against him. *Pearson*, 356 Ill. App. 3d at 392. Here, the trial court's preliminary comments to potential jurors did make reference to the four *Zehr* principles.

In support of his argument, defendant suggests that *People v. Gregg*, 315 Ill. App. 3d 59, 70 (2000), "assumed a duty on the part of the trial court to query potential jurors according to *Zehr*." In *Gregg*, the defendant raised an insanity defense. The trial court refused the defendant's request, in response to a potential juror's question, to inform the potential jurors that the defendant's burden of proof for an insanity defense was proof by a preponderance of the evidence. On appeal, the court held that the trial court erred by refusing defense counsel's request to inform the potential jurors about the defendant's burden of proof. *Gregg*, 315 Ill. App. 3d at 73. Contrary to defendant's argument, *Gregg* clearly does not stand for the proposition that a trial court has a *sua sponte* duty to ask questions of potential jurors regarding the four *Zehr* principles.

Defendant also contends that the trial court's "broad statement of applicable law" and instructions at the beginning of the trial were insufficient to inform potential jurors about the *Zehr* principles. However, in *Foreman*, the court found that the jurors were substantially informed of their "general duties and responsibilities" pursuant to Rule 431(a) when the court asked the potential jurors as a group whether they could sign a guilty verdict form if the State met its burden or a not-guilty form if the State failed to meet its burden; questioned potential jurors who expressed doubt about their ability to do either; asked about each potential juror's prior jury experience and whether they or their families had been a victim of a crime or been involved in a lawsuit; after the jury was empaneled, informed them that the defense did not have a burden of presenting evidence; and, before deliberation, informed them of the presumption of defendant's innocence. *Foreman*, 361 Ill. App. 3d at 149-50.

Similarly, here, the jury was substantially informed of its "general duties and responsibilities" in accordance with Rule 431(a) before the trial started. Each potential juror was individually asked if he or she would have a problem with returning a guilty plea if defendant's guilt was proven beyond a reasonable doubt or a not-guilty verdict if defendant's guilt was not proven beyond a reasonable doubt. Jurors who indicated they had a problem signing a guilty verdict were excused. The court also asked whether potential jurors were victims of a crime and whether they had served on juries before.

Furthermore, even though the trial court did not <u>ask</u> about the *Zehr* principles, it <u>informed</u> the potential jurors about them. During its preliminary comments, the trial court informed the potential jurors of the following: (1) that defendant was presumed innocent; (2) that the State had

14

the burden of proving defendant guilty beyond a reasonable doubt; (3) that defendant had no obligation to testify on his own behalf or call any witnesses in his defense; and (4) the fact that he did not testify could not be held against him.  See *Zehr*, 103 Ill. 2d at 477.  When it was instructing the jury before deliberations, the trial court reiterated each of these principles.  See *Foreman*, 361 Ill. App. 3d at 150 (it is sufficient if the jury is informed of all the *Zehr* principles before deliberation, even if potential jurors are not informed during jury selection).

Accordingly, we find that the trial court did not err when it failed to ask whether the jury understood and accepted the *Zehr* principles.

### C.  Fees

Defendant contends, and the State agrees, that the $100 fine pursuant to section 5-9-1.10 (730 ILCS 5/5-9-1.10 (West 2004))  must be vacated.  Section 5-9-1.10 imposes the $100 fine for three specific fines: unlawful use or possession of weapons by felons or persons in the custody of the Department of Corrections facilities (section 24-1.1); aggravated discharge of a firearm (section 24-1.2); and reckless discharge of a firearm (section 24-1.5).

We have authority to correct the mittimus.  *People v. Latona*, 184 Ill. 2d 260, 278 (1998).  Because section 5-9-1.10 does not authorize a fine for convictions of aggravated unlawful use of a weapon under section 24-1.6(a)(1), (a)(3)(A), the fine will be stricken from the mittimus.

### III.  CONCLUSION

Affirmed and mittimus corrected.

QUINN, P.J., with CAMPBELL, J., concurring.