THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOSE E. REYES, Defendant-Appellant.

Second District    No. 2—92—0303

Opinion filed October 15, 1993.

QUETSCH, J., concurring in part and dissenting in part.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, Mary Beth Burns, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Jose E. Reyes, appeals his bench trial conviction of the unlawful use of a weapon (Ill. Rev. Stat. 1991, ch. 38, par. 24—1(a)(12) (now codified, as amended, at 720 ILCS 5/24—1(a)(12) (West 1992))) arguing (1) that the court improperly denied his motion to suppress evidence; (2) that he did not receive the effective assistance of counsel due to a conflict of interest; and (3) that the fine imposed by the court should be offset by a $5 credit for one day of time served.

On April 17, the defendant was suspended from his high school and told by school administrators that he should leave the school grounds and not return. At approximately 3:30 p.m., the defendant drove to the school to pick up some of his friends. He had a passenger, Jorge Rodriquez, in the front passenger seat. The defendant parked in the school parking lot. The school bell rang and students began to leave the building. The school principal and a counselor approached the defendant's car. The principal told the defendant that he should leave the school premises. The defendant complied. After leaving the parking lot, and after seeing his friends, the defendant pulled into another driveway of the parking lot.

One of his friends, Jose Rubio, a codefendant in the case, entered the car. The school counselor then approached the defendant's car again and told him to leave the premises. The defendant said that he would leave as soon as his friends were in his car. Two more students entered the defendant's vehicle, and the defendant drove away from the school.

Codefendant Rubio, who is not a party to this appeal, testified that he entered the backseat of the car and put a gym bag he was carrying on the floor near his feet. West Chicago police officer James Blickle testified that on the afternoon in question he was parked in the south lot of the high school. Officer Blickle testified that the school principal approached him and said that a car driven by a suspended student, Jose Reyes, who was not permitted on school property, had passed through the school lot twice. The principal further noted that he had seen a baseball bat in the defendant's car. While Blickle was talking to the principal, a school counselor came running over to him and stated that he had just heard from a group of high school students that Reyes had a gun in his car.

Officer Blickle watched the defendant's car leave the school property, and he followed it for a few blocks, reporting on the radio that he was about to stop a car containing five people and possibly a gun. Blickle activated his lights and pulled the car over. As the cars stopped, an unmarked squad car driven by police detective Spencer Kroning pulled in front of the defendant's car.

Blickle got out of his vehicle with his gun drawn and ordered the defendant and his friends to exit the car with their hands up. He further instructed them to put their hands on the outside of the car. More police officers arrived, bringing the number of officers at the scene to about eight. Blickle testified that the officers took the car's occupants away from the defendant's car because they "wanted to be able to look into the car and secure the areas just to make sure that

in case one of the subjects should give us a problem, that we would at least have them away from the car if there is [*sic*] anything in the car." The officers patted down the five men, ascertaining that none of them had anything on his person.

Detective Kroning testified that after patting down the suspects, he went to the defendant's car and looked into the window. He saw a baseball bat sticking out from under the backseat and noticed a gym bag on the floor of the back passenger side of the car. Kroning went into the car and picked up the bag, which he noticed was heavier at one end than the other. Kroning claimed that he felt what appeared to be a gun inside the bag. He unzipped the bag, which contained books and a tee shirt wrapped around an object. According to Kroning, he could feel the weight and shape of a gun through the shirt wrapping. He unwrapped the shirt, revealing a .9-mm Smith & Wesson automatic handgun.

After the gun was found, the defendant and the other passengers were arrested. The defendant waived his right to counsel and made statements to the police. Those statements were included in the State's evidence presented at trial. According to the defendant's statements, a few days before April 17 he bought the gun in question for $20. The defendant told the police that he brought the gun to school on the morning of April 17 and gave it to a student named Rogelio Coronado because the defendant knew he would be suspended that day and would have to empty his locker at that time. The defendant said that after leaving school he borrowed a friend's car and returned to the school to pick up his friends. He saw Coronado in the parking lot and picked him up. Coronado brought the gun out in the gym bag he was carrying.

Codefendant Rubio, who was also an occupant of the defendant's car when it was stopped by the police, also made a statement to the police upon his arrest. He stated that he carried the bag into the defendant's car. He further stated that he had found the gun a day earlier and had brought it to school with the hope that he could sell it.

On April 18, 1991, the defendant and codefendant Rubio were charged with the unlawful use of weapons and criminal trespass to land. At a stipulated bench trial, the defendant moved to suppress the evidence of the gun, arguing that there was not probable cause to search the car. The court denied that motion.

■ The defendant first argues that the court erred in denying his motion to suppress because even if the police had probable cause to stop his car for trespassing on school property, there was no probable cause to search the car and gym bag without a warrant.

On review, a ruling by the circuit court on a defendant's motion to suppress should not be set aside unless it is found to be clearly erroneous. (*People v. Clark* (1982), 92 Ill. 2d 96, 99.) Because there is no dispute of material facts as they relate to the police search, we need only determine whether, as a matter of law, there were grounds for a warrantless search. See 92 Ill. 2d at 99.

The seizure and search of a closed container in an automobile is permissible under the automobile exception of the warrant requirement pursuant to *United State v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *People v. Smith* (1983), 95 Ill. 2d 412, 418.

Probable cause to search a car exists when the totality of the facts and circumstances within the officer's knowledge at the time of the search are sufficient to warrant a reasonable person's belief that contraband is present in the vehicle. (*Smith*, 95 Ill. 2d at 419.) Such probable cause may arrive from information obtained from an informant, where an officer has reason to believe that information is reliable. See *People v. Moraca* (1984), 124 Ill. App. 3d 561, 564-65.

The defendant here argues that the tip from the school guidance counselor to the police officer was based on hearsay and amounted to an anonymous tip that was not sufficiently reliable for the officers to obtain probable cause to search the gym bag in the car.

In *Moraca*, an operator at an organization known as "Catch a Thief with Citizens' Help" (CATCH) took a call from an anonymous source and relayed the information therefrom to the police department. The substance of the tip was that the defendant Moraca drove a certain described van with a revoked license and that he possessed a machine gun and cannabis. The police saw a van which met the informant's description. The police effected a stop solely on the basis of the anonymous informant's tip and searched the van. See *Moraca*, 124 Ill. App. 3d at 562-63.

In affirming the lower court's finding that the search was in violation of the fourth amendment, the *Moraca* court distinguished its facts from *Adams v. Williams* (1972), 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921, where the court held an informant's tip provided sufficient probable cause for a search of an automobile. (*Moraca*, 124 Ill. App. 3d at 564.) *Moraca* distinguished *Adams*, noting that in *Adams* the informant spoke directly to the officer and the information was immediately verifiable at the scene; thus, the case was unlike that where an officer merely received a tip from an anonymous telephone

informant. (*Moraca*, 124 Ill. App. 3d at 565.) Further, *Moraca* distinguished the substance of the informant's tip, noting that the police were only informed that the defendant was "in possession" of cannabis and a machine gun, but did not specify whether those items were on his person or in the van, whereas in *Adams* the informant told the officer that the defendant was carrying narcotics and a gun on his person. *Moraca*, 124 Ill. App. 3d at 565.

In the case at bar, Officer Blickle was told by the school principal that a student was on the school property without permission and that the student in question had a baseball bat visible in the car. A guidance counselor further told Officer Blickle that he heard from some students that there was a gun in the defendant's car. Here, although a portion of the information upon which the officer acted came from an anonymous source, unlike in *Moraca* the tips received included information from a known and reliable source. (See *Smith*, 95 Ill. 2d at 419; *People v. Tisler* (1984), 103 Ill. 2d 226, 231-32.) The tips here were made directly to the police officer, and the officer, in part, was notified that a gun was *in* the car. In view of *Adams* and *Moraca*, we find that the court's decision on the defendant's motion to suppress was not clearly erroneous. See *Clark*, 92 Ill. 2d at 99.

■■ The defendant next argues that because his counsel simultaneously represented codefendant Rubio, his counsel had a conflict of interest preventing him from forcefully arguing that Rubio's statement was a true account of events and that the defendant was not guilty.

Here, the defendant and codefendant Rubio were both charged with the unlawful possession of the same handgun found in a car driven by the defendant. Rubio told the police subsequent to his arrest that the gun belonged solely to him, mentioning nothing about the defendant. The defendant also made a statement to the police to the effect that the gun was his, making no mention of Rubio.

At the defendant's hearing on the motion to suppress, the court raised *sua sponte* the issue of a possible conflict of interest due to counsel's dual representation. Counsel answered to the court that he perceived no conflict of interest in representing both the defendant and the codefendant Rubio. Later, at a hearing on the defendant's motion to reconsider the denial of his motion to suppress, the defense counsel informed the court that he did not "forcefully argue" the probable cause issue as it related to the defendant because his "twofold" representation of both the defendant and the codefendant Rubio prevented him from doing so. In its ruling denying the defendant's

motion to suppress, the court noted that it did not "see any antago- nistic defense nor any conflict [of interest]."

Generally, to establish a violation of the right to the effective as- sistance of counsel, a defendant must prove that counsel was incompe- tent and that, but for counsel's unprofessional errors, the outcome of the proceedings would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525.) However, where counsel is representing multiple defendants and a potential conflict is brought to the attention of the court by counsel before trial or at an early stage of the trial, the trial court *must* take adequate steps to deal with the potential conflict. (Emphasis added.) *People v. Jones* (1988), 121 Ill. 2d 21, 28, citing *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173.

As noted earlier, the issue of a conflict was first raised *sua sponte* by the trial court at the defendant's suppression hearing. However, counsel told the court that he perceived no conflict of interest. Never- theless, at a later stage of the proceedings, counsel noted that he did not forcefully argue a point as it related to the defendant due to his multiple representation. Here, for counsel to effectively argue that the defendant was not guilty, he would have to argue that Rubio's statement to the police was true and accurate. However, this would have been in direct conflict with codefendant Rubio's interest. Accord- ingly, we find that an actual conflict was manifested at trial here, and that adequate steps were not taken to deal with this conflict. See *Jones*, 121 Ill. 2d at 28.

For the reasons stated, the judgment of the circuit court of Du Page County is reversed. Given that the evidence in the first trial was sufficient to protect against double jeopardy (see *People v. Benabe* (1989), 180 Ill. App. 3d 235, 241), we remand the cause for a new trial. We therefore need not address the defendant's argument concerning a $5 sentence credit for time served.

Reversed and remanded.

UNVERZAGT, J., concurs.

JUSTICE QUETSCH, concurring in part and dissenting in part:

I concur in the majority's opinion insofar as it finds that defend- ant was denied the effective assistance of counsel, reverses the defendant's conviction, and remands this case for a new trial. How- ever, I respectfully dissent from the majority opinion on the issue of

whether the trial court was correct in denying defendant's motion to suppress.

The majority effectively concedes that the sole reason, in the mind of the police, for stopping and searching defendant's vehicle was the "tip" "heard from some students," by a school counselor, and passed on to the police by that counselor, that there was a gun in the defendant's car. The majority then concedes that this "information" upon which the officers acted was from an *anonymous* source (unidentified students). Next, the majority leaps, without any foundation in the record, to the conclusion that the "source" was "known and reliable," evidently because, having been heralded to the police by a counselor, the otherwise unreliable, uncorroborated hearsay became purified and suddenly "reliable."

The majority does not explain, nor can it, how the police, having "heard it through the grapevine," could have any *reasonable* basis for either stopping or searching defendant's car, in spite of the ominous shading (Read: "Totality of the Facts and Circumstances") given in the majority's opinion to the presence in the car of a baseball bat(!) (not a good omen for innocent baseball players) and the vague and tenuous belief of the school principal that defendant should not have been in a publicly owned parking lot driveway after being suspended.

The police in this case had no reason to believe that the "information" that they had received, through the medium of a guidance counselor, from unidentified students was reliable.

In my judgment, this court is ignoring its own precedent established in *People v. Moraca* (1984), 124 Ill. App. 3d 561, 564-65, and vainly attempts to equate the legal effect of the facts in the case at bar with those in *Adams v. Williams* (1972), 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921, and *People v. Tisler* (1984), 103 Ill. 2d 226, 231-34.

There was no probable cause for the search in this case, and the "tip" which formed the basis for the police search did not meet those standards of reliability required by law. See *Moraca*, 124 Ill. App. 3d at 565.

I would reverse, as clearly erroneous, the trial court's order denying defendant's motion to suppress.