THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORIAN WHITE, Defendant-Appellant.

First District (3rd Division) No. 1—03—3202

Opinion filed December 21, 2005.

Michael J. Pelletier and Rebecca Myhr, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Sally Dilgart, Samuel Shim, and Timothy King, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ERICKSON delivered the opinion of the court:

Following a bench trial where defendant Corian White was tried with codefendants Tracy and Jerry Chambers, defendant was convicted of armed robbery and aggravated unlawful restraint and was sentenced to six years in the Illinois Department of Corrections. On appeal, defendant contends that he was denied his sixth amendment right to the effective assistance of trial counsel due to an actual conflict of interest which resulted from counsel's joint representation of defendant and codefendant Tracy Chambers. He also contends that the compulsory extraction and inclusion of his DNA in identification databases, pursuant to section 5—4—3 of the Unified Code of Corrections (the Code) (730 ILCS 5/5—4—3 (West 2002)), violated his fourth amendment right to be free from unreasonable searches and seizures.

## BACKGROUND

The charges against defendant and codefendants arose from the armed robbery of a fast-food restaurant on October 13, 2001. A private attorney filed an appearance on behalf of defendant and codefendant Tracy Chambers. The attorney assured the trial court that there was no conflict of interest. Defense counsel cross-examined the State's witnesses on behalf of Tracy Chambers, and his law partner cross-examined the State's witnesses on behalf of defendant. Jerry Chambers was represented by the office of the public defender.

The State presented testimony from three eyewitnesses—Trenda Andrews, Jeremy Ellis, and Vincent George—and from Chicago police detective James Carlassare.

Andrews, the manager of the restaurant, testified on direct examination that on October 13, 2001, she was at the back of the restaurant near the "prep area" when three men with guns robbed the store. "They" told her and the other employees to go to the back of the restaurant. When "they" asked for the manager, Andrews approached the front of the store where the "dark skin guy with the oval face" told her to open the registers. Andrews emptied one register into a book bag the robber had given her and handed it back to him. Andrews did the same with the safe, which was located at the back of the restaurant. The offender told Andrews to count to a certain number and to go to the back with the other employees. All three offenders then left.

Andrews identified all three defendants and specifically identified defendant White as the person who had her empty the registers and the safe. She also testified she had seen one of the other offenders mopping the lobby floor before the robbery. Andrews gave a description of the offenders to the police and later made an identification of "I think two guys" from photographs. She also viewed two lineups but did not remember when. She identified two people in the first lineup and identified defendant White in the second.

During the cross-examination of Andrews on behalf of codefendant Tracy Chambers, defense counsel attacked Andrews' recollection of the offense. Andrews testified that one offender had worn a mask. A second offender had been mopping the floor. Andrews was "not sure" if it was the one mopping who wore the mask, but knew it was not "the one that took [her] in the back to the safe." During the cross-examination, the following also transpired:

"Q. You did give height and weight descriptions, correct?

A. Mainly for one.

Q. So it's your testimony that you talked to the officers who arrived and only told them a description as far as height and weight as to the person who took you by the safe, no one else; is that right?

A. I guess. I'm not sure.

Q. Well, did you give any other descriptions to the police other than the one that took you in the back?

* * *

A. Yes, I guess—no, I just told—they asked me about height, how tall they were.

Q. Did you even observe them enough to give the police a description as to their height and weight?

* * *

A. No.

* * *

Q. The only one that you could describe to the police at the scene five minutes after it happened was the one that took you in the back, correct?

A. Yes.

Q. How did you describe him?

A. Dark skin, oval face, short [haircut], stocky.

Q. Did you give a height and weight description?

A. I wasn't sure. I said maybe 180, something like that.

\* \* \*

Q. You identified that person today?

A. Yes.

Q. He has a beard today, correct?

A. I can't see. Yes."

Defense counsel continued to cross-examine Andrews about her recollection of the robbery and her identification of codefendants Tracy and Jerry Chambers. At one point, Andrews admitted there was "a lot of stuff" she did not remember about the robbery and that she was not "paying any attention to the two guys that did not take [her] to the safe." The following also transpired:

"Q. The two guys that didn't go in the back with you, did they talk you to any way [sic]?

A. The only one I remember talking to me is the one that was telling me to come to the front and open the registers and stuff. That's the only one that directly talked to me.

Q. Which one out of three men [sic] here was that one?

A. The one named Corey [sic]."

Defense counsel's law partner adopted counsel's cross-examination for defendant White and attempted unsuccessfully to elicit testimony from Andrews that she did not see defendant's face.

Jeremy Ellis, an employee of the restaurant and a convicted felon, testified on direct examination that he could not remember the offenders' faces and that he "probably" viewed two lineups but did not remember picking anyone out. He did not identify any defendants in open court. No additional information was elicited on cross-examination.

Vincent George, another restaurant employee, testified on direct examination that he was working in the back when the store was robbed and that he stayed in the back until it was over. George spoke to the police that night and viewed a lineup from which he identified one individual, but he was not sure if that person was one of the offenders. He did not identify any defendants in open court.

After the case was continued numerous times while the State secured a witness, Detective Carlassare testified that defendant White, whom he identified in open court, was arrested on December 27, 2001.

Carlassare then conducted two lineups, which were viewed by Andrews and Ellis. Both identified defendant White.

After the State rested, defendants moved for a directed finding of not guilty. The court granted the motion in regard to codefendants Tracy and Jerry Chambers, but denied it in regard to defendant White. White then rested, and the court found him guilty. In making its findings, the court stated:

> "I think that Miss Andrews of all the people that she had an opportunity to view, Corian White was the one that she had an opportunity, more than ample opportunity.
>
> The testimony convinced me that she had ample time to identify him, ample time to see him. She was with him or he was with her most of the time. He was the guy that was ordering her around. He was the one who told her what to do.
>
> She had plenty of time and she was absolutely certain in this court when she said he is the one. He did it. Finding of guilty."

## ANALYSIS

### I

Defendant first contends on appeal that defense counsel demonstrated his loyalty to Tracy Chambers rather than defendant by the questions he asked on cross-examination of Andrews which "highlighted the relative strength of Ms. Andrews' identification of [defendant] against the relative weakness of her identification of his co-defendant, Tracy Chambers." Defendant maintains that trial counsel's defense strategies were thus constrained by his loyalty to Tracy Chambers and denied him effective assistance of counsel.

■ A defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation. *People v. Hardin*, 217 Ill. 2d 289, 299 (2005); *People v. Morales*, 209 Ill. 2d 340, 345, 808 N.E.2d 510 (2004). In cases involving joint representation of codefendants where the trial court is not apprised of the potential conflict, reversal of the defendant's conviction will be had upon a showing of an actual conflict of interest. *People v. Spreitzer*, 123 Ill. 2d 1, 18, 525 N.E.2d 30 (1988); *People v. Grant*, 339 Ill. App. 3d 792, 801, 791 N.E.2d 100 (2003). This means the defendant must point to some specific defect in his counsel's strategy, tactics, or decision making that is attributable to the conflict. *Spreitzer*, 123 Ill. 2d at 18; *Grant*, 339 Ill. App. 3d at 801. While "mere speculative or hypothetical conflicts are insufficient to demonstrate [an] actual conflict of interest" (*Grant*, 339 Ill. App. 3d at 801), a defendant need not prove the conflict contributed to his conviction (*Spreitzer*, 123 Ill. 2d at 19). The prohibition against conflicts of interest is based upon the notion that no attorney is able to "serve two masters." *Spreitzer*, 123 Ill. 2d at 13.

In this case, defendant maintains that an actual conflict of interest existed because he and codefendant Tracy Chambers had antagonistic defenses. In support of this claim, defendant cites defense counsel's cross-examination of Andrews where he elicited testimony showing that Andrews focused her attention on defendant during the robbery, which the court highlighted as key testimony in finding him guilty. The State responds that defendant has failed to provide direct evidence to support his contention and that the record does not demonstrate the existence of an actual conflict. The State's position is not supported by the record before us.

■ Defense counsel's cross-examination of Andrews demonstrated an actual conflict. Counsel, in questioning Andrews on behalf of codefendant Tracy Chambers, attempted to show that Andrews never really saw the other two offenders and thus could not identify them to the police or in court. To establish his theory, counsel emphasized that the only offender Andrews (1) described to police, (2) spent time with, and (3) talked to was the individual who took her to the safe, *i.e.*, defendant Corian White. The prosecution could not have done a better job of eliciting facts that supported her identification of defendant White, counsel's own client. We note that neither of the other two eyewitnesses identified any defendants in open court.

We therefore agree with defendant's assertion that the effect of counsel's cross-examination was to "sacrifice" him for the sake of codefendant Tracy Chambers, who was acquitted. See *People v. Lee*, 271 Ill. App. 3d 1093, 1097, 649 N.E.2d 457 (1995). The record in this case clearly demonstrates that trial counsel was unable to "serve two masters." *Spreitzer*, 123 Ill. 2d at 13.

Thus, defendant has pointed to a specific defect in counsel's tactics or strategy that resulted from the conflict. We therefore reverse defendant's convictions and remand for a new trial. See *People v. Reyes*, 251 Ill. App. 3d 426, 431, 622 N.E.2d 86 (1993).

## II

■ Defendant next contends that the compulsory extraction and inclusion of his DNA in identification databases, pursuant to section 5—4—3 of the Code (730 ILCS 5/5—4—3 (West 2002)), violated his fourth amendment right to be free from unreasonable searches and seizures. Because we reverse defendant's convictions, we also reverse the trial court's order requiring DNA sampling. See *People v. Orta*, 361 Ill. App. 3d 342, 836 N.E.2d 811 (2005).

## CONCLUSION

We therefore reverse defendant's convictions. As we find the

evidence sufficient to support a guilty finding and to protect against double jeopardy, we remand the cause for a new trial.

Reversed and remanded.

HOFFMAN, P.J., and THEIS, J., concur.